UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE RANDLE, | CV F   03-6313  OWW SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 60 ) |
| ALAMEIDA, et. al., | |
| Defendants. | |

**A.  RELEVANT PROCEDURAL HISTORY**

Willie D.  Randle is ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on September 24, 2003.  Plaintiff filed an Amended Complaint on October 6, 2003.  On October 6, 2004, the Court dismissed the Complaint with leave to amend.  Plaintiff, however, notified the Court on October 27, 2004, of his intent to proceed solely on the excessive force claim against Defendants Cardenas and Miranda and dismiss all remaining claims and defendants from the action.  The Court issued Findings and Recommendations to that effect on April 4, 2005.  The District Court adopted the Findings on June 1, 2005.

On January 26, 2007, Defendants filed a Motion for Summary Judgment.  Plaintiff filed an Opposition on March 1, 2007.  On March 8, 2007, Defendants filed a Reply to the Opposition.  Plaintiff filed a Surreply (titled "Plaintiff respond to Defendants Reply of Plaintiff Opposition for

Summary Judgment"). The Court issued an Order striking the Surreply from the record on April 11, 2007.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (*citing* <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (*citation omitted*).

**C. UNDISPUTED FACTS**[1]

1. Plaintiff is a California prisoner serving a term of imprisonment for rape, first degree

---

[1] The following facts are undisputed for the purpose of this Motion.

3

1  burglary, first degree robbery and sexual battery in violation of California Penal Code
2  § 261(a)(2); 459/460, 211/212.5(a) and 243.4(a). Plaintiff was sentenced to seventy-
3  five years to life.

4  2. Plaintiff was transferred to the California Correctional Institution ("CCI") on January
5  10, 2002, and remained there until April 30, 2003.

6  3. Correctional Officer L. Cardenas is employed by the California Department of
7  Corrections and Rehabilitation ("CDCR") and is assigned to CCI. She is a Defendant
8  in this action.

9  4. Correctional Officer G. Miranda is employed by CDCR and is assigned to CCI. He is
10  named as a Defendant in this action.

11  5. Correctional Officer Reed is employed by CDCR and is also assigned to CCI.
12  Although he is mentioned throughout Plaintiff's pleadings, he is not a defendant in
13  this action.

14  6. On Saturday, November 16, 2002, at approximately 1955 hrs., while working as a
15  Floor Officer, Reed and Defendant Cardenas were operating a modified shower
16  program Housing Unit Three at CCI. The shower program is run by officers escorting
17  the incarcerated inmates to and from the unit shower.

18  7. Officer Reed asked the inmates in cell 323 if they wanted to shower. Plaintiff was
19  assigned to the lower bunk in cell 323. It was explained that showering would have
20  to be in the double-shower head unit because that was all that was available at that
21  time. This meant that both inmates in the cell would have to shower at the same time.
22  Having only one inmate using a double shower would delay other inmates receiving
23  their showers. There were many inmates in the unit. Plaintiff became agitated when
24  told this and very loudly declared "that's messed, why you doing that?" Defendant
25  Cardenas suggested to Officer Reed that she should continue on to the next cell
26  because Plaintiff's behavior was escalating. Officer Reed and Defendant Cardenas
27  continued to process inmates for showers. Plaintiff continued yelling.

28  8. Plaintiff's cell door (Cell number 323), opened, Plaintiff grabbed his shower items

1    and exited the cell and began to walk towards the showers.

2    9.   Defendant Cardenas was escorting another inmate back to his cell from the showers
3         when Plaintiff suddenly appeared in her path.  This surprised her because Plaintiff had
4         been in his cell when she last saw him and she was not informed he had been
5         released.  She later learned that staff had inadvertently opened the wrong cell,
6         releasing Plaintiff rather than another inmate.

7    10.  Officer Reed observed Plaintiff out of his cell and standing in front of Defendant
8         Cardenas with fists clenched and yelling.  He was unable to hear what Plaintiff was
9         yelling, but appeared to be very angry, so he responded to assist Defendant Cardenas.

10   11.  Defendant Cardenas told Plaintiff that she did not have a shower available for him
11        and to return to this cell or "lock up."  Plaintiff did not comply and began to protest
12        the order verbally by saying "I'm not going to my cell because then you won't talk to
13        me."  Defendant Cardenas ordered Plaintiff again to go back into his cell.

14   12.  Plaintiff continued to demand to speak to the sergeant and did not return to his cell.

15   13.  Defendant Cardenas again ordered Plaintiff to his cell and informed him that she
16        would use the spray if he did not comply.  Plaintiff did not comply.  At this point,
17        Defendant Cardenas withdrew her MK-9 O.C. Pepper Spray cannister from her
18        holster and gave Plaintiff a fourth direct order to enter his cell.  Plaintiff loudly
19        responded "You're gonna spray me because I want a shower?"  Defendant responded
20        that she would spray him because he was not following a direct order.

21   14.  Plaintiff stands approximately 6' 4" tall and weighs approximately 220 to 230 pounds.

22   15.  Defendant Cardenas is much smaller than Plaintiff, weighing approximately 98
23        pounds.

24   16.  Defendant Cardenas ordered Plaintiff back into his cell for the fifth time.  At this
25        point, Plaintiff threw his shower gear onto the floor striking Defendant Cardenas in
26        the leg and verbally protesting the order when Defendant Cardenas discharged pepper
27        spray at Plaintiff three times, striking him in the face and chest.

28   17.  As Defendant Cardenas dispensed the spray, Plaintiff began to swing his arms about

5

|     |     |
| --- | --- |
| 1   | wildly, she also ordered Plaintiff to the ground. However, Plaintiff again did not comply and was swinging his arms about wildly. |
| 18. | Defendant Miranda responded to assist Defendant Cardenas with Plaintiff and also ordered Plaintiff to get down. When Plaintiff did not comply, Defendant Miranda threw a small T-16 O.C. Pepper grenade toward Plaintiff ordering him again to get down. Plaintiff finally got down onto his hands and knees and then suddenly jumped back to his feet. Plaintiff was again ordered to get down but Plaintiff instead began to walk around with his arms outstretched and yelling. At this time, Defendant Miranda sprayed Plaintiff with a short burst of pepper spray. Plaintiff complied with the order to get down and was handcuffed. |
| 19. | Correctional Officer Soto, who had also responded to the incident, arrived and escorted Plaintiff to the sink to begin decontamination. Shortly thereafter, Officer Soto and another officer who also had responded, escorted Plaintiff out of the housing unit and to the shower for decontamination. |
| 20. | Officer Reed observed Defendant Cardenas spray Plaintiff with pepper spray and order him to the ground. He also observed Plaintiff refuse the order, the tossing of the grenade by Defendant Miranda and the yelling to Plaintiff to get down on the ground. Plaintiff began to get down but stopped at his knees and did not move any farther. Reed observed Plaintiff begin throwing and swinging his arms wildly toward Cardenas and Miranda. Plaintiff finally got down as ordered and was handcuffed by Defendant Miranda with other officers escorting him from the building. |
| 21. | Officer Cardenas prepared a CDCR 115 disciplinary report charging Plaintiff with attempted battery on an officer. Plaintiff was placed in administrative segregation pending further investigation. An incident packet was prepared setting forth the incident, the investigation and findings. |
| 22. | On January 21, 2003, Plaintiff was found guilty of the lessor and included offenses of wilful disobedience and delaying an officer. The hearing officer wrote that Plaintiff "states he was upset about not getting a shower since he had not showered in five |

1  days." Plaintiff admits he disobeyed orders and was disobedient which caused a delay
2  in the Units showering program." Plaintiff "admitted he was agitated and had his
3  hands clenched into fists" but claims "he was not going to assault anyone."

4  23. Correctional Officer A. Hawkinson is employed by CDCR and is assigned to CCI.
5  On Saturday, November 16, 2002, Hawkinson was working as a Control Officer
6  observing the day room in Housing Unit Three at CCI. The Floor Officers, including
7  Cardenas were providing showers to the unit inmates. Defendant Cardenas motioned
8  for Hawkinson to open cell 322, however, he inadvertently opened cell 323 and
9  witnessed Plaintiff step out of his cell into the unit. Hawkinson also observed
10 Defendant Cardenas order Plaintiff back to his cell but he began to argue with
11 Cardenas and appeared angry and irate as he stood in front of Cardenas with clenched
12 fists and yelling loudly. Hawkinson activated his personal alarm and Defendant
13 Miranda responded and ordered Plaintiff to get down but Plaintiff did not.
14 Hawkinson then observed Miranda toss a T-16 OC Pepper grenade on the ground in
15 front of Plaintiff. Plaintiff finally complied with the order to get down but then
16 suddenly got up swinging his arms toward Miranda. Defendant Miranda then sprayed
17 pepper spray into Plaintiff's facial area and Plaintiff then complied with the order to
18 get down. Other officers alerted by the alarm also arrived. Defendant Miranda
19 applied mechanical restraints to Plaintiff and Officer Soto, who had arrived, escorted
20 him from the unit.

21 24. On Saturday, November 16, 2002, Medical Technical Assistant (MTA) DePerio was
22 directed to respond to Housing Unit Five at CCI, where an inmate was being held in a
23 holding cell. DePerio was informed that an inmate had received an application of
24 pepper spray during a disturbance. Upon arrival, DePerio conducted a medical
25 examination of Plaintiff. DePerio found that Plaintiff was not in distress and was
26 alert and oriented. DePerio used a stethoscope and found that both of Plaintiff's lungs
27 were clear. DePerio noted that Plaintiff had received decontamination following
28 exposure to O.C. Pepper spray and T-16 Pepper grenade. No injuries were found and

7

1    Plaintiff was not short of breath.  DePerio cleared Plaintiff to be housed in
2    Administrative Segregation and prepared a Medical Report of Injury or Unusual
3    Incident (CDCR 7219) according to procedure.
4    25. On December 14, 2002, Correctional Officer Ashmore contacted Plaintiff in regards
5    to the Rules Violation Report he received on November 16, 202, Log #IV/02-11-
6    0883, charging him with violating CCR § 3005(c) (attempted battery on a peace
7    officer). Ashmore asked Plaintiff if he had any objections to him being assigned as his
8    Investigative Employee and Plaintiff voiced no objection.  Ashmore noted that
9    Plaintiff had received all pertinent reports and requested witnesses.  He advised
10   Plaintiff of his position as an Investigative Employee and his responsibilities and
11   Plaintiff acknowledged that he understood Ashmore.  Ashmore told Plaintiff of his
12   rights in the disciplinary process and Plaintiff stated that he understood his rights and
13   supplied the officer with a statement.  Ashmore cannot attest to the accuracy or
14   truthfulness of the statement that Plaintiff provided, but can attest to the fact that the
15   statement is that which Plaintiff provided him.

**D. ANALYSIS**

   *1. Summary of Complaint*[2]

The events at issue took place while Plaintiff was incarcerated at the California Correctional Institute ("CCI") in Tehachapi, California.  Plaintiff alleges that on November 16, 2002, at approximately 7:30 p.m., Defendants Cardenas, Miranda and Reed (no longer a Defendant), were running a modified shower program.  Plaintiff was informed that he could only shower if his cellmate also wanted to.  When Plaintiff's cellmate declined to shower, C/O Reed walked to the next cell.  Approximately fifteen (15) minutes later, Plaintiff's cell door opened.  Plaintiff believed that this was for the purpose of his having a shower.  Thus, Plaintiff secured his

---

[2]Although the Court docket reflects that Plaintiff filed an Amended Complaint on October 6, 2003, it is really an Amendment to the Complaint and contains only supplemental facts to the original complaint filed on September 24, 2003.  Thus, the Court examines both the original complaint filed on September 24, 2003, and the Amendment to the Complaint filed on October 6, 2003, together in addressing the instant Motion for Summary Judgment.

shower items and walked out of his cell. At this time, Defendant Cardenas stepped in front of Plaintiff and told him to "lock it up." Plaintiff replied that he had not had a shower in five days and requested a shower. Cardenas informed Plaintiff that if he did not "lock up" she would "spray" him. Plaintiff responded by asking if she was going to spray him because he wanted a shower and also asked to speak to a Sergeant. Plaintiff states that Defendant Cardenas told him she would spray him because he would not "lock up" and then proceeded to spray Plaintiff three times. Plaintiff states that as he was getting on the ground, Defendant Miranda threw a spray grenade under his face. Plaintiff states that at this point, he jumped up from the ground to get fresh air and tried to reach for water when he was hit again with another burst of spray by Defendant Miranda. Plaintiff states he then vomited and crawled to the sink area. During this time, Plaintiff recalls hearing someone yell "get down" and he responded that he could not breathe. The person yelling directed Plaintiff to "cuff up" and that they would take him to water. Plaintiff complied, was cuffed, taken to water and then placed in a shower to decontaminate. Plaintiff states that he continued to feel burning for thirty (30) minutes and that he was not medically examined for an hour after the incident. Plaintiff states that he was placed in Administrative Segregation ("Ad-Seg") and written up for threatening staff.

### 2. Eighth Amendment Claim for Relief

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided

9

that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Here, Defendants present evidence that Plaintiff, who had exited his cell without permission to shower, refused to reenter his cell or "lock up" when Defendant Cardenas ordered him to. Plaintiff was observed standing in front of Defendant Cardenas with his fists clenched and appearing angry, however, he did not comply. Instead, Plaintiff began to protest by refusing to go back to his cell because Cardenas would not talk to him if he complied. Defendant Cardenas ordered Plaintiff back to his cell a second time and informed him that she would use spray if he failed to comply. Plaintiff, however, did not comply. At this time, Defendant Cardenas withdrew the OC Pepper spray cannister from her holster and gave Plaintiff a third Order to enter his cell. Instead, Plaintiff responded "You're gonna spray me because I want a shower?" Defendant Cardenas replied that she would spray Plaintiff because he was not complying with her order to return to her cell. Defendant Cardenas ordered Plaintiff to his cell a fourth time. At this time, Plaintiff threw his shower gear down to the floor striking Defendant Cardenas in the leg. Defendant Cardenas then discharged three sprays toward Plaintiff striking him in the face and chest and ordered Plaintiff to the ground, however, Plaintiff again did not comply and was swinging his arms about wildly. At this point, Defendant Miranda appeared on the scene to assist Defendant Cardenas and also ordered Plaintiff to get down on the ground. When Plaintiff did not comply, Defendant Miranda threw a small T-16 OC Pepper grenade

toward Plaintiff and again ordered him to get on the ground. Plaintiff began to get down on all fours but then suddenly jumped back to his feet. Defendant Miranda again ordered him to get down but Plaintiff instead began to walk around with arms outstretched and yelling. Defendant Miranda then sprayed Plaintiff with a short burst of pepper spray. Plaintiff finally complied, got down to the ground, was handcuffed and taken to the sink to obtain water. Defendants present evidence that shortly thereafter, Plaintiff was escorted out of the housing unit to a shower for decontamination.

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In opposition, Plaintiff complains that Defendants denied him access to speak to a supervisor in order to minimize the situation. Further, that despite Plaintiff's repeated requests, Defendant Cardenas did not allow Plaintiff to speak to that supervisor. Plaintiff states that he "was just trying to get a shower or speak to the sergeant to clear things up." (Plaintiff's Decl. in Opposition at 2.) Plaintiff states further that when Defendant Cardenas put a can of spray to his face he "knew then that Defendant Cardenas was gonna spray, and so I toss my shower roll to the side ..." Plaintiff states that after the spray was dispensed, he could not help but jump up because the excessive spray caused breathing difficulty.

The Court finds that Plaintiff has failed to present evidence that creates a disputed issue of fact warranting trial. As noted above, the test for an excessive force claim is whether the force

applied was in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." " Hudson, 503 U.S. at 7.  Here, Plaintiff relies solely on his contention that the force applied was excessive and unnecessary in order to gain control of Plaintiff.  However, it is undisputed that Plaintiff was aware that a modified shower program was in place requiring escort of inmates to the showers. (UF #6.)   Despite this, when Plaintiff exited his cell and no one was there to escort him, he attempted to go to the showers on his own and then encountered Defendant Cardenas.  (Plaintiff's Deposition ["Depo."] at 59:15-20.) Defendant Cardenas informed Plaintiff to return to his cell but instead of complying, Plaintiff protested.  (UF #11.)  It is undisputed that Plaintiff willfully disobeyed Defendant Cardenas' order to return to his cell on at least four more separate occasions.  (UF # 11, 13, 16.)  During these refusals, Plaintiff was seen clenching his fist, yelling at Defendant Cardenas as he demanded to speak to a sergeant.  (UF #10, 23.)  Plaintiff conceded in his deposition that Defendant Cardenas was a very small framed woman and that he stands at approximately 6' 4" tall and weighs approximately 220 to 230 pounds.  (Depo. at 38:23-24, 39:5-7).  It is undisputed that when Defendant Miranda arrived on the scene, Plaintiff had already refused to return to this cell numerous times, had been sprayed and still did not comply with Miranda's order to get down on the ground.  (UF #18.)  After Miranda dispensed the pepper grenade and again ordered Plaintiff to the ground, Plaintiff finally got down on all fours but then suddenly jumped back to his feet, arms outstretched and yelling. Id.   Plaintiff concedes in his Declaration in Opposition that he "knew that if [he] lock[ed] it up as the Defendant wanted, [he] wouldn't get a shower or a chance to speak to the sergeant." (Decl. at 7; Depo.at 64:13-16.)  Plaintiff concedes in his deposition that when Defendant Cardenas indicated to him that she would spray him if he didn't comply, he "threw [his] shower that [he] had in his hands ... and said 'well, cuff me up.  Let me go see the sergeant'" but she sprayed him.  (Depo. at 68:5-9.)   It is further undisputed that after being sprayed by Cardenas, Plaintiff did not go to the ground as directed.  (UF #17.)  When Defendant Miranda appeared on the scene and also ordered Plaintiff to get down, he again did not comply.  (UF #18.)  This caused Defendant Miranda to dispense a pepper grenade. Id. Plaintiff appeared to begin to comply when he got down on all fours but then jumped back to his

feet. Id. Miranda then sprayed Plaintiff with a burst of pepper spray and again ordered Plaintiff to the ground. Id. Plaintiff finally complied with the order, got to the ground, was handcuffed and decontaminated. Id. The Court finds the undisputed facts demonstrate that the force used was done in an effort to maintain or restore discipline and not for the purpose of maliciously and sadistically causing Plaintiff harm. As such, summary judgment on behalf of Defendants is warranted.

**E. CONCLUSION AND RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Motion for Summary Judgment be GRANTED in favor of Defendants and the case DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 26, 2007**                          /s/ Sandra M. Snyder
                                                                    UNITED STATES MAGISTRATE JUDGE